| | | |
|---|---|---|
| LAMONT BURRELL, General Guardian for Brenda Allen Burrell, | ) ) ) | File No. 1:25-cv-376 |
| Plaintiff | ) ) | **(JURY TRIAL DEMANDED)** |
| CHARLES JASON WILBORN, in his individual and official capacity, Person County Sheriff; NEEKA SHAVONNE LAWSON, in her individual and official capacity, TRAVIS LEE SLAUGHTER, in his individual and official capacity; HARRIETT SHAWN WAGSTAFF; in her individual and official capacity; and THE OHIO CASUALTY INSURANCE COMPANY, as Surety, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

**NOW COMES** Plaintiff, by and through undersigned counsel, complaining of Defendants and alleges as follows:

## INTRODUCTION

Plaintiff, in his official capacity, as General Guardian for Ms. Brenda Allen Burrell (hereinafter "Ms. Burrell"), brings this action pursuant to 42 U.S.C § 1983 against Defendants, alleging, among other things, that Defendants, acting under the color of state law, violated Ms. Burrell's Fourth Amendment rights under the United States Constitution, to be free from unreasonable seizure, which is applicable to the States by incorporation of the Fourteenth Amendment of the United States Constitution.

1

## PARTIES

1. Plaintiff is a resident and citizen of North Carolina.

2. On or about January 8, 2025, Plaintiff was appointed as General Guardian for Ms. Brenda Allen Burrell, in the matter of The Estate of Brenda Allen Burrell, which was filed in the State of North Carolina, General Court of Justice, Superior Court Division for Durham County (File No. 24E002346-310).

3. Ms. Brenda Allen Burrell (hereinafter "Ms. Burrell"), the person for whose benefit this action is brought, is a resident and citizen of North Carolina.

4. Pursuant to Letters of Appointment for General Guardianship issued to Plaintiff, Plaintiff is authorized to bring this suit on behalf of the Ms. Burrell.

5. Upon information and belief, Defendant Charles Jason Wilborn is a resident and citizen of North Carolina.

6. At all relevant times, Defendant Charles Jason Wilborn was the Sheriff of Person County, North Carolina.

7. Defendant Charles Jason Wilborn goes by "Jason Wilborn".

8. At all relevant times, Defendant Charles Jason Wilborn, (hereinafter "Sheriff"), had the care and custody of the Person County Detention Center (hereinafter "Jail").

9. Pursuant to N.C. Gen. Stat. § 162–55, Defendant Sheriff was the keeper of the Jail and appointed other keepers of the Jail.

10. At all relevant times, Defendant Sheriff had a duty to train and supervise the deputies and detention officers under his command.

11. Defendant Sheriff had a non-delegable duty to oversee deputies, detention officers and the daily functioning and administration of the Jail.

12. At all relevant times, Defendant Sheriff was acting under the color of state law.

13. Upon information and belief, Defendant Neeka Shavonne Lawson (hereinafter "Lawson") is a resident and citizen of North Carolina.

14. At all relevant times, Defendant Lawson was employed as a Shift Supervisor Seargeant/Detention Officer by Defendant Sheriff.

15. At all relevant times, Defendant Lawson worked at the Jail.

16. At all relevant times, Defendant Lawson was acting under the color of state law.

17. At all relevant times, Defendant Lawson was acting within the scope of her employment with Defendant Sheriff.

18. At all relevant times, Defendant Lawson was acting in furtherance of the interest of Defendants Sheriff.

19. Upon information and belief, Defendant Travis Slaughter (hereinafter "Slaughter") is a resident and citizen of North Carolina.

20. At all relevant times, Defendant Slaughter was employed as Shift Supervisor Seargeant/Detention Officer by Defendant Sheriff.

21. At all relevant times, Defendant Slaughter was acting under the color of state law.

22. At all relevant times, Defendant Slaughter was acting within the scope of his employment with Defendant Sheriff.

23. At all relevant times, Defendant Slaughter was acting in furtherance of the interest of Defendants Sheriff.

24. Upon information and belief, Defendant Harriettt Shawn Wagstaff (hereinafter "Wagstaff") is a resident and citizen of North Carolina.

25. At all relevant times, Defendant Wagstaff was employed as Detention Officer by Defendant Sheriff.

26. At all relevant times, Defendant Wagstaff worked at the Jail.

27. At all relevant times, Defendant Wagstaff was acting under the color of state law.

28. At all relevant times, Defendant Wagstaff was acting within the scope of her employment with Defendant Sheriff.

29. At all relevant times, Defendant Wagstaff was acting in furtherance of the interest of Defendants Sheriff.

30. Upon information and belief, Defendant The Ohio Casualty Insurance Company (hereinafter "Defendant Surety") is a corporation recognized under the existing laws of the State of New Hampshire whose office is located at 100 Liberty Way, Dover, NH, 03820, USA. Defendant Surety is authorized to do business in North Carolina by the North Carolina Department of Insurance/Commissioner of Insurance and is subject to service of process through the Commissioner of Insurance pursuant to Article 16 of Chapter 58 of the North Carolina General Statutes. Defendant Surety provided a Sheriff's Bond for Sheriff Wilborn as required by N.C. Gen. Stat. § 162–8 and N.C. Gen. Stat. §58–72–1, et seq., and said bond was in effect at all relevant times complained of herein. Defendant Surety has been joined as a party to this action pursuant to N.C. Gen. Stat. §58-76.5

31. Upon information and belief, Defendants and any and all of their agents, employees, officers, and/or healthcare providers, have waived any sovereign and/or governmental

immunity that might have been raised by virtue of the Surety's bonds and to the extent of said bonds and other liability insurance.

32. Upon information and belief, at all relevant times, Defendant Sheriff, and any and all of his agents, employees, and/or officers, waived any sovereign and/or governmental immunities that might have been raised in that, in addition to the aforementioned Sheriff bond, Defendant Sheriff had in force, at all relevant times, plans of insurance and/or County resolutions that waived immunity and established a funded reserve pursuant to N.C. Gen. Stat. § 153A-435, and/or participated in a local government risk pool pursuant to Article 23 of Chapter 58 of the North Carolina General Statutes, to cover acts, omissions, negligence, and/or misconduct as alleged hereinafter by Plaintiff.

33. Upon information and belief, with respect to the claims at issue in this case, Defendants qualify as "Covered Persons" under a Liability and Property Coverage Contract issued by the North Carolina Counties Liability and Property Joint Risk Management Agency ("NCACC/LPP).

## JURISDICTION

34. This matter involves claims which arise under the United States Constitution and; therefore, the Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331.

35. In addition to the claims arising under the Court's Original jurisdiction, the Complaint includes state law claims which are related to claims arising under the Court's original jurisdiction and which form part of the same case or controversy under Article III of the United States Constitution; and therefore, the Court has supplemental jurisdiction of such state law claims pursuant to 28 U.S. Code § 1367.

## VENUE

36. The events or omissions giving rise to the claim(s) in this matter, occurred in Person County, North Carolina, which is within the United States Middle District of North Carolina.

## STATEMENT OF FACTS

37. The allegations contained in all of the foregoing paragraphs are re-alleged and are incorporated herein by reference as if fully set forth.

38. On or about August 27, 2023, Ms. Brenda Allen Burell was an inmate at the Person County Detention Center ("Jail").

39. The Jail is located at or about 120 Court Street, Roxboro, NC 27573.

40. At the time of the detention at issue, Ms. Burell was approximately sixty-seven (67) years old.

41. At all relevant times, Ms. Burrell suffered from a mental illness.

42. At all relevant times, Ms. Burrell suffered from a mental disability.

43. Upon information and belief, at the time of the events at issue, Ms. Burrell was held in a medical unit within the Jail.

44. Upon information and belief, Ms. Burrell was known by the detention staff at the Jail to sing and/or talk to herself.

45. In response to Ms. Burrell's talking and/or singing, Defendants, and in particular, Defendant Lawson, would often scream at Ms. Lawson, telling her to, "Shut the fuck up".

46. During the course of her detention, there were multiple instances when Defendants would threaten to strike Ms. Burrell.

47. During the course of her detention, there were multiple instances where Defendants did in strike Ms. Burrell.

48. On or about August 27, 2023, Ms. Burrell, was talking and singing out loud, as she tended to do.

49. Annoyed by Ms. Burrell, Defendant Lawson, without just cause, threatened to spray Ms. Burrel with pepper spray.

50. Shortly after threatening to pepper spray Ms. Burrell, Defendant Lawson did in fact pepper spray Ms. Burrell.

51. Defendant Lawson's use of pepper spray was excessive force.

52. Shortly after pepper spraying Ms. Burrell, Defendant Lawson continued her excessive force against Ms. Burrell by knocking Ms. Burrell to the ground.

53. After knocking Ms. Burrell to the ground, Defendant Lawson got on top of Ms. Burrell and proceeded to assault Ms. Burrell by repeatedly striking Ms. Burrell in the face.

54. Eventually, Defendant Slaughter joined Defendant Lawson in the assault by holding Ms. Burrell down as Defendant Lawson continued to assault Ms. Burrell.

55. While Defendant Slaughter held Ms. Burrell down, Defendant Lawson struck Ms. Burrell yet again in the face with her fist. Shortly thereafter, Ms. Burrell was handcuffed, with her hands behind her back, and then placed in a sitting position on the floor, near the door of the medical unit.

56. At some point Defendant Lawson left Ms. Burrell, only to return a few minutes later, at which time she violently struck Ms. Burrell again in the presence of Defendant Wagstaff.

57. Rather than intervening to prevent Defendant Lawson from further harming Ms. Burrell, Defendant Wagstaff, in a gross dereliction of her duty, stood by idly watching as Defendant Lawson carried out her threat of striking Ms. Burrell again in the face, which caused Ms. Burrell to fall back on the floor.

58. After Defendant Lawson struck Ms. Burell in the face, Defendant Wagstaff stood by looking at Ms. Burrell, as if nothing had happened.

59. As a result of the assault by Defendant Lawson on or about August 27, 2023, Ms. Burrell suffered swelling of her forehead near her hairline, swelling and bruising of her cheek area, a swollen elbow, broken skin and scratches on her face, tenderness and/or soreness throughout her body, eye pain, and blurry vision.

60. On or about March 26, 2024, Ms. Burrell, by and through undersigned counsel, filed a Petition for Release of Custodial Law Enforcement Recording, in the State of North Carolina, General Court of Justice, Superior Court Division for Person County, seeking any and all video recordings of the above-referenced encounter between Ms. Burrell and Defendant Lawson.

61. On or about April 4, 2024, the Superior Court, for the General of Justice for Person County, entered an order, granting the above-referenced Petition for Release of Custodial Law Enforcement Recordings.

62. The recording that was produced by the Person County Sherriff's department in response to the Court's Order of release, clearly shows that Defendant Lawson assaulted Ms. Burrell and was not acting in self-defense.

63. Upon information and belief, it was the custom and practice of Defendants and other detention officers at the Jail, to abuse inmates in certain areas inside the Jail, which are not covered by the facility's surveillance cameras, so as to avoid such abuses being caught on camera.

64. Upon information and belief, at all relevant times, Defendant Sheriff was aware that there were areas inside the Jail, which were not within the view of the facility' surveillances cameras.

65. Upon information and belief, at all relevant times, Defendant Sheriff was aware that the detention staff would routinely utilize the areas not within view of the facility's surveillance cameras, to abuse inmates.

66. Upon information and belief, Defendant Sheriff intentionally allowed the areas not under surveillance to exist, for the specific purpose of allowing the detention staff to engage in abuse of inmates, without said abuses being caught on camera.

67. Upon information and belief, with respect to the recordings that were produced by the Person County Sherriff's Office in response to State Court's Order of release, the first part of the interaction at issue between Ms. Burrell and the detention occurs within an area not within view of the Jail's surveillance cameras.

68. Notwithstanding the fact that the recording produced by the Person County Sherriff's Office does not capture the entire encounter at issue, between Ms. Burrell and Defendant Lawson,

9

it does capture enough, such that it's clear that Defendant Lawson clearly employed excessive force against Ms. Burrell.

69. In the recording that was released, Defendant Lawson can be seen repeatedly punching Ms. Burrell with a closed fist.

70. Defendants Slaughter and Wagstaff were in a position to prevent the assault of Ms. Burrell on or about August 27, 2023.

71. Under the circumstances, the Defendants utter failure to act, amounted to deliberate omission, in gross violation of their duty, which was in reckless and wanton disregard of Plaintiff's rights.

72. While Defendant Lawson was the primary actor in the assault of Ms. Burrell on or about August 27, 2023, Defendants Slaughter and Wagstaff acted in concert with Defendant Lawson to violate Ms. Burrell's right to be free from excessive force.

73. Upon information and belief, Defendants Slaughter and Wagstaff, in a further dereliction of their duty, failed to report the assault on Ms. Burrell by Defendant Lawson.

74. Upon information and belief, Defendants failed to take pictures of Ms. Burrell's injuries.

75. Notwithstanding the fact that Defendant Lawson clearly assaulted Ms. Burrell, Defendant Wilborn failed to initiate criminal charges against Defendant Lawson.

76. With respect to all matters complained of, Defendants acted maliciously and/or corruptly.

77. With respect to all matters complained of, Defendants' conduct was objectively unreasonable.

78. With respect to all matters complained of, Defendant's conduct was objectively unjustified.

79. Under the circumstances, no reasonable officers could have failed to appreciate that the conduct captured in the recordings was a violation of Ms. Burrell's rights.

80. Each of the Defendants failed to act as appropriate to prevent and/or stop the other Defendants from unlawfully using excessive force against Plaintiff.

81. Each of the Defendants had a duty to protect Plaintiff from the willful, wanton, malicious and wrongful conduct of their fellow officers.

82. Upon information and belief, it was the common practice of the detention officers and/or deputies to abuse inmates at the Jail in areas, which were not in view of the operatable cameras.

83. Upon information and belief, the Defendant Sheriff had condoned the practice of detention officers abusing and violating the rights of inmates, as long as the abuses were not caught on camera.

84. Upon information and belief, Defendant Sheriff had a history of failing to take the issue of inmate abuse seriously.

85. Upon information and belief, Ms. Burrell had made multiple complaints to the Jail Administration regarding the ongoing physical abuse, only to have complaints disregarded by Defendants and other detention staff.

86. On or about April 17, 2024, Ms. Burrell, by and through legal counsel, contacted Defendant Sheriff and the Person County Attorney, Mr. T.C. Morphis, requesting a copy of any and all policies, procedures, guidelines, and/or instructions, as well as any related complaint forms, if any, regarding any administrative remedies available, if any, to inmates at the

11

Person County Jail, with respect to the conditions of the jail. Undersigned counsel's request was not acknowledged, nor was the requested information ever provided.

87. As a result of the unreasonable seizure, Plaintiff has suffered severe emotional distress.

88. The occurrence caught on the released recording, is just one example of a pattern of similar violence directed at Ms. Burrell by Defendants and other detention staff at the Person County Jail.

89. The Defendants' conduct has exacerbated Ms. Burrell's pre-existing medically diagnosed mental health condition(s), which has resulted in Ms. Burrell suffering severe emotional distress and/or mental anguish.

90. As a result of Defendants' conduct, Plaintiff has experienced increased feelings of anxiety, restlessness, loss of appetite, and feelings that people are out to physically harm her.

91. Ms. Burrell's symptoms include among other things, anxiety, paranoia, nightmares and flashbacks of the assault by Defendants.

92. Upon information and belief, as a result of the conduct of Defendants', Plaintiff has sought treatment from a mental health professional.

93. According to a *Report of Separation*, dated August 29, 2023, Defendant Lawson's separation from her employment as Detention Officer with the Person Country Sherriff's Office, was "a result of a criminal investigation or violation of Commission rules."

94. All of the charges for which Ms. Burrel was incarcerated at the time of the assault at issue, were dismissed without leave.

12

95. At the time that Defendant Wilborn hired Defendant Lawson to work as detention officer as the Person County Jail, Defendant Wilborn knew or should have known that Defendants Lawson had reputation of violence.

96. Defendant Lawson has a criminal record, which includes the charges of *Assault with a Deadly Weapon*, Communication of Threats; *Weapons on Educational Property*; *Harassing Phone Calls*; *Cyberstalking;* multiple counts of *Simple Assault*; *Simple Affray*; and *Injury to Personal Property.*

97. Prior to working for Defendant Sheriff, Defendant Lawson was employed as *Correctional Officer I*, with the North Carolina Department of Public Safety (hereinafter "DPS").

98. Defendant Lawson was employed by DPS during the period August 20, 2018-July 24, 2020.

99. On or about July 24, 2020, Defendant Lawson was dismissed from her employment as a *Correctional Officer I* with the DPS due to "Unacceptable Personal Conduct."

100. In the notice of Dismissal Letter, dated July 24, 2020, the honorable Amanda Cobb, the Warden of the Orange Correctional Center, the facility where Defendant Lawson worked when she was employed by DPS, wrote to Ms. Lawson, stating, "Management has lost confidence in your ability to work effectively to ensure the control, custody, safety, and welfare of an incarcerated population"

101. Defendant Lawson was unfit to serve as a detention officer at the Person County Detention Center.

102. At the time that Defendant Sheriff hired Defendant Lawson, he knew or should have known that Defendant Lawson was unfit to serve as detention officer.

13

**FIRST CLAIM FOR RELIEF:**
**DEFENDANTS, ACTING UNDER THE COLOR OF STATE LAW, SUBJECTED MS.**
**BURRELL TO EXCESSIVE FORCE, IN VOLATION OF MS. BURRELL'S**
**FOURTH AMENDMENT RIGHT UNDER THE UNITED STATES**
**CONSTITUTION, AS INCORPOATED BY THE FOURTEENTH AMENDMENT**

103. The allegations contained in all of the foregoing paragraphs are re-alleged and are incorporated herein by reference as if fully set forth.

104. During the course of Defendant' seizure of Ms. Burrell, Defendant Officers subjected Ms. Burrell to more force than reasonably necessary under circumstances to effectuate the seizure.

105. Under the circumstances, Defendant's use of force against Ms. Burrell was excessive, in violation of Ms. Burrell 's right to be free from unreasonable seizure as guaranteed by the Fourth Amendment of the United States Constitution, as incorporated and applied to States by the Fourteenth Amendment.

106. Defendants use of force against Ms. Burrell was grossly excessive.

107. With respect to all matters complained of, Defendants acted under the color of state law.

108. As a direct and proximate cause of Defendants' used of excessive force against Ms. Burrell, Ms. Burrell has suffered damages, including, but not limited to physical and emotional injury, along with deprivation of her constitutional rights.

**SECOND CLAIM FOR RELIEF:**
**DEFENDANT OFFICERS ARE LIABLE**
**TO PLAINTIFF FOR BATTERY**

109. The allegations contained in all of the foregoing paragraphs are re-alleged and are incorporated herein by reference as if fully set forth.

14

110. Defendants intended to cause and did cause Ms. Burrell  a harmful and/or offensive touching when they subjected Ms. Burrell  to excessive force.

111. In their intent to cause Ms. Burrell  a harmful and/or offensive touching, Defendants acted maliciously and corruptly.

112. Ms. Burrell did not consent to the harmful and/or offensive touching.

113. As a direct and proximate cause of the harmful and/or offensive touching caused by Defendant Lawson, Ms. Burrell  has suffered damages in the form of physical injury, medical expenses, mental suffering and mental anguish, and other losses to be proven at trial.

114. Defendants' use of force against Ms. Burrell  was grossly excessive and resulted in a harmful and/or offensive touching to Plaintiff.

115. Defendants' use of force against Ms. Burrell was not in self-defense.

116. Defendants were not privileged to use excessive force against Ms. Burrell.

117. Given the malicious and corrupt intent of Defendants in causing Ms. Burrell  a harmful and/or offensive touching by the use of excessive force, Defendants are not entitled to qualified immunity.

**THIRD CLAIM FOR RELIEF:**
**DEFENDANTS ARE LIABLE TO PLAINTIFF FOR ASSAULT**

118. The allegations contained in all of the foregoing paragraphs are re-alleged and are incorporated herein by reference as if fully set forth.

119. Defendants  intended to cause and did cause Ms. Burrell  apprehension of a harmful and/or offensive touching.

15

120. In their intent to cause Ms. Burrell apprehension of a harmful and/or offensive touching, Defendants acted maliciously and corruptly.

121. Plaintiff did not consent to the apprehension of the harmful and/or offensive touching.

122. As a direct and proximate cause of the apprehension of a harmful and/or offensive touching caused by Defendants, Ms. Burrell has suffered damages in the form of physical injury, mental suffering and mental anguish, and other losses to be proven at trial.

123. Defendants' act of causing Ms. Burrell apprehension of a harmful and/or offensive touching was done in self-defense.

124. Defendants were not privileged to use cause Ms. Burrell apprehension of a harmful and/or offensive touching.

125. Given the malicious and corrupt intent of Defendants in causing Ms. Burrell apprehension of  harmful and/or offensive touching, Defendant Lawson is not entitled to qualified immunity.

**FOURTH CLAIM FOR RELIEF:**
**DEFENDANTS ARE LIABLE TO PLAINTIFF FOR INTENTIONAL.**
**INFLICTION OF EMOTIONAL DISTRESS**

126. The allegations contained in all of the foregoing paragraphs are re-alleged and are incorporated herein by reference as if fully set forth.

127. Defendants' conduct, including, but not limited to their use of grossly excessive force against Ms. Burrell, while also taunting Ms. Burrell, was extreme and outrageous.

128. Defendants intended and/or knew or should have known that their conduct would cause Ms. Burrell severe emotional distress.

16

129. Defendants acted with reckless indifference to the likelihood that their conduct would cause Ms. Burrell severe emotional distress.

130. As a direct and proximate cause of Defendants' extreme and outrageous conduct, Ms. Burrell has suffered severe emotional distress, and other losses to be proven at trial.

131. Upon information and belief, as a result of the emotional distress caused by the acts and/or omissions complained of, Ms. Burrell has been treated by licensed mental health professional.

132. Upon information and belief, as a result of the emotional distress caused by the acts and/or omissions complained of, Ms. Burrell has been diagnosed with a mental health condition and/or has suffered exacerbation of any existing mental health condition.

133. Given the malicious and corrupt intent of Defendants in causing Ms. Burrell severe emotional distress, Defendants are not entitled to qualified immunity.

**FIFTH CLAIM FOR RELIEF:**
**DEFENDANTS SLAUGHTER AND WAGSTAFF ARE**
**LIABLE FOR GROSS NEGLIGENCE**

134. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

135. Defendants slaughter and Wagstaff owed a duty of reasonable care to Ms. Burrell to avoid acting in a way that would result in an unreasonable risk of harm to Ms. Burrell.

136. Defendants Slaughter and Wagstaff breached their duty of care by idly standing by as one of their fellow officers, without good cause, repeatedly struck Ms. Burrell, an elderly and mentally disabled women, who at the time, was defenseless.

17

137. The breach of the duty of care by Defendants Slaughter and Wagstaff was a cause in fact and proximate cause of Ms. Burrell's injuries.

138. As a proximate cause of the breach of care by Defendants Slaughter and Wagstaff, Ms. Burrell has sustained damages, including, but not limited to, physical injury, mental anguish, and other losses to be proven at trial.

139. Under the circumstances, the conduct of Defendants Slaughter and Wagstaff's rise above ordinarily negligence and amounts to willful and wanton conduct.

**SIXTH CLAIM FOR RELIEF:**
**DEFENDANTS ARE LIABLE FOR NEGLIGENT INFLICTION**
**OF EMOTIONAL DISTRESS**

140. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

141. Defendants owed a duty to refrain from engaging in conduct that would foreseeably cause Ms. Burrell severe emotional distress.

142. Defendants breached said duty by failing to reasonably apply force during their encounter Ms. Burrell and/or by failing to intervene as necessary to protect Ms. Burrel from unreasonable force by the fellow officers.

143. Defendants knew or should have known that their conduct would cause Ms. Burrell severe emotional distress.

144. Defendant's conduct did in fact cause Ms. Burrell severe emotional distress

145. The breach of Defendants Slaughter and Wagstaff was a cause in fact and proximate cause of Ms. Burrell's injuries

18

146. As a proximate cause of the breach of Defendants Slaughter and Wagstaff, Ms. Burrell has sustained damages, including, but not limited to, physical injury, mental anguish, and other losses to be proven at trial.

**SEVENTH CLAIM FOR RELEIF:**
**DEFENDANTS ARE LIABLE FOR INJURY TO PRISONER IN**
**VIOLATION OF N.C. GEN. STAT. § 162–55**

147. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

148. Ms. Burrell was committed to the custody and care of Defendants and the other detention staff and medical and mental health providers who worked at the Jail during the time she was incarcerated.

149. Defendants who worked at the Facility during Ms. Burrell's incarceration were all keepers of the Jail pursuant to N.C. Gen. Stat. § 162–55.

150. The conduct of Defendants was so careless and reckless that it demonstrated a total disregard of the consequences and a heedless indifference to the safety, wellbeing, and rights of Ms. Burrell.

151. The conduct of Defendants was a cause in fact and proximate cause of Ms. Burrell's injuries.

152. As a result of Defendants' conduct, Ms. Burrell has suffered damages, including, physical injury, mental anguish, and other losses to be proven at trial.

153. Ms. Burrell  is entitled to recover treble damages pursuant to N.C. Gen. Stat. § 162–55, for which governmental and qualified immunity does not apply.

19

## EIGHTH CLAIM FOR RELEIF:
## DEFENDANT JASON WILBORN IS LIABLE FOR GROSS
## NEGLIGENCE IN HIRING/RETENTION

154. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

155. At all relevant times, Defendant Lawson was an employee of Defendant Sheriff

156. During the course of her employment, Defendant Lawson committed a tortious act against Brenda Burrell.

157. At all relevant times, Defendant Lawson was unfit to serve in the role of a detention officer.

158. At all relevant times, Defendant Sheriff had actual and/or constructive notice of Defendant Lawson unfitness.

159. As an actual and proximate cause of Defendant Lawson's unfitness, Ms. Burrell suffered injury.

160. As actual and proximate cause of Defendant Lawson's unfitness, Ms. Burrell has suffered damages, including, physical injury, mental anguish, and other losses to be proven at trial.

161. Defendant Wilborn knew and or should have known that Defendant Lawson had a reputation for violence based on her prior criminal record, which included charges of *Assault with a Deadly Weapon*, *Communication of Threats*; *Weapons on Educational Property*; *Harassing Phone Calls*; *Simple Assault*; *Simple Affray*; and *Injury to Personal Property.*

162. Defendant Wilborn knew or should have known that Defendant Lawson was unfit based on the fact that on or about July 24, 2020, prior to being hired as detention officer for the Person County Sheriff's Office, Defendant Lawson was dismissed from her employment

20

as a *Correctional Officer I*, with the North Carolina Department of Public safety due to "Unacceptable Personal Conduct."

163. Defendant Wilborn knew or should have known that in the notice of Dismissal Letter, dated July 24, 2020, the honorable Amanda Cobb, the Warden of the Orange Correctional Center, wrote to Ms. Lawson, stating, "Management has lost confidence in your ability to work effectively to ensure the control, custody, safety, and welfare of an incarcerated population"

164. Upon information and belief, Defendant Wilborn failed to reasonably investigate Ms. Lawson's reputation for violence, as well as work history, which reflected a lack of truthfulness, lack of accountability, a remorsefulness, and her history of claiming to be a victim, when in fact, she was at fault.

165. As an actual and proximate cause Defendant Wilborn's negligent hiring and/or retention of Defendant Lawson, Ms. Burrell has suffered damages, including, but not limited, physical injuries, mental anguish, and other losses to be proven at trial.

166. As an actual and proximate cause Defendant Wilborn's negligent hiring and/or retention of Defendant Lawson, Ms. Burrell has suffered damages, including, but not limited, physical injuries, mental anguish, and other losses to be proven at trial.

**NINTH CLAIM FOR RELEIF:**
**DEFENDANT SHERIFF IS VICARIOULSY LIABLE AS TO THE STATE LAW CLAIMS, FOR THE ACTS OF DEFENDANTS LAWSON, SLAUGHTER, AND WAGSTAFF UNDER THE DOCTRINE OF RESPONDENT SUPERIOR**

167. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

21

168. With respect to all matters complained of, the detention officers and/or deputies at issue, including, but not limited to, Defendants Lawson, Slaughter, and Wagstaff, were working within the scope of their employment with Defendant Wilborn.

169. With respect to all matters complained of, the detention officers and/or deputies at issue, including, but not limited to, Defendants Lawson, Slaughter, and Wagstaff, were working in furtherance of the interest of their employer Defendant Wilborn.

170. With respect to the claims arising under state law, immunity has been waived to the extent of surety bond and/or other applicable insurance.

## TENTH CLAIM FOR RELEIF:
## DEFENDANT SURETY IS LIABLE ON SHERIFF'S OFFICIAL BOND
## N.C. GEN. STAT. § 58–76–1, et seq.

171. The allegations contained in the previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

172. As alleged herein, Defendant Wilborn, himself and by and through his agents, neglected and/or disregarded, the duties of his office and committed wrongful acts as Sheriff of Person County.

173. As a direct and proximate result of Defendant Sheriff Wilborn's neglect and wrongful acts in office, Ms. Burrell, sustained damages, including, but not limited to physical injury, mental anguish and other damages to be proven at trial. Consequently, Plaintiff, on behalf of Ms. Burrell, is entitled to recovery from Defendant Surety damages on the official Sheriff Bond.

## ELEVENTH CLAIM FOR RELIEF:
## DEFENDANTS ARE LIABLE FOR PUNITIVE DAMAGES
## IN THEIR INDIVIDUAL CAPACITIES

174. The allegations contained in all of the foregoing paragraphs are re-alleged and are incorporated herein by reference as if fully set forth.

175. With respect to all acts and/or omissions complained of, the Defendants acted willfully, wantonly, maliciously, recklessly and with callous indifference to rights of Ms. Burrell.

**DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff prays the following relief:

1.  That Plaintiff recover from Defendants judgment for compensatory damages in excess of $500,000.00;

2.  That Plaintiff recover from Defendants, in their individual capacity, punitive damages in excess of $1,500,000;

3.  That Defendants be held jointly and severally liable for punitive damages;

4.  That Plaintiff recover pre-judgment and post-judgment interest on all damages awarded;

5.  That Plaintiff recover the costs of this litigation, including, statutory attorney fees.

6.  That all issues of fact be tried by a jury; and

7.  Such other and further relief as the Court shall deem just and proper.

This the 13th day May, 2025.

/s/ Brandon S. Atwater
Counsel for Plaintiff
NC Bar No. 41786
Atwater Law PLLC
1140 Kildaire Farm Road, Ste 200-8
Cary, NC 27511
Mailing Adress:
PO Box 853
Cary, NC 27512
b.atwater@atwaterlaw.com
Tel: (919) 530-1090
Direct: (919) 251-6126
Fax: (919) 530-1091

24